## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INTERNATIONAL UNION OF** | : | **CIVIL ACTION** |
| **PAINTERS AND ALLIED TRADES** | : | |
| **DISTRICT COUNCIL NO. 21** | : | |
| **HEALTH AND WELFARE FUND,** *et* | : | |
| *al.* | : | |
| | : | |
| **v.** | : | **NO. 18-3480** |
| | : | |
| **SERVICE PAINTING, INC.,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                      **May 16, 2019**

The president and principal shareholder of a contractor owing obligations under a collective bargaining agreement to pay a defined sum into union employee welfare funds for each union employee often cannot escape his individual liability under the Employee Retirement Income Security Act or Pennsylvania law because the contractor sought bankruptcy protection. He may remain liable if the union funds establish his personal role in fiduciary misconduct or conversion of sums owed to the union funds. When, as today, the contractor's president/principal shareholder stopped paying the required sum to the union funds so he would have enough money to help buyout a former partner he did not want around, and then the contractor sought bankruptcy protection, we must address whether, and for what amount, the president/principal shareholder can be liable to the union funds as an ERISA fiduciary and for allegedly converting these funds. After analyzing the interplay between the automatic stay afforded to the bankrupt contractor and the president/principal shareholder's obligations, and evaluating witness credibility, we enter the accompanying judgment Order against the contractor's president/principal shareholder for most of the claimed losses arising from his breach of ERISA fiduciary duties and for conversion.

## I. Background.

International Union of Painters and Allied Trades District Council 21's Employee Fund sued Service Painting, Inc. and its president and principal shareholder Nick Garavelas under the Employee Retirement Income Security Act (ERISA) for unpaid employee contributions under a collective bargaining agreement.[1] Mr. Garavelas is the president of Service Painting.[2] He has sole authority to direct payments and write checks on behalf of Service Painting.[3] Service Painting has been a party to a collective bargaining agreement with District Council 21 since 1993.[4] Under the collective bargaining agreement, Service Painting must make monthly contribution payments to District Council 21's employee funds.[5] Mr. Garavelas testified Service Painting deducts the contribution amounts from the Union employees' paychecks and remits the amount to District Council 21.[6]

Mr. Garavelas owns seventy percent of Service Painting and his son owns the remaining thirty percent.[7] From November 27, 2013 until two or three years ago when he gifted his son thirty percent of the company, Mr. Garavelas owned Service Painting as the sole shareholder.[8]

Before November 27, 2013, Mr. Garavelas owned fifty percent of Service Painting.[9] Mr. Garavelas's former business partner Charles Campbell owned the remaining fifty percent.[10] On November 27, 2013, Mr. Garavelas bought out Mr. Campbell's share of Service Painting for $1.46 million under a stock purchase agreement.[11] He paid Mr. Campbell an initial lump sum and agreed to pay the remaining balance in monthly installments of $22,000, beginning January 1, 2014 through June 1, 2018.[12] Mr. Garavelas authorized and directed Service Painting to make the monthly installment payments to Mr. Campbell.[13] Mr. Garavelas testified he wanted Mr. Campbell out of Service Painting.[14] Service Painting never defaulted on its monthly installment payment obligation to Mr. Campbell.[15]

2

### *Service Painting's failure to remit employee contributions from January 2014 to October 2017*

Following the stock purchase agreement, Service Painting began defaulting on its employee contribution obligations to District Council 21 starting in January 2014.[16] Service Painting admittedly owed the Funds $223,988.26 in unremitted employee contributions for this under a Judgment Note.[17] As of March 7, 2019, Service Painting owed $62,639.67 in principal on the Note.[18] The Funds do not seek money owed under the Judgment Note in this lawsuit.[19]

### *Service Painting's failure to remit contributions from January 2018 to July 2018*

Following the period covered by the Judgment Note, Service Painting again did not fully remit employee contributions to the Funds from January 2018 to July 2018.[20] The Funds seek unremitted employee contributions from this period in this lawsuit. Mr. Garavelas admitted Service Painting only partially remitted these contributions:

| | |
|---|---|
| Mr. Milz: | Did you understand when employing members of District Council 21 . . . that the payment obligations it had went to the benefit funds, as well as dues that were deducted . . . and other monies that were deducted from the paychecks of its members? |
| Mr. Garavelas: | Yes. |
| Mr. Milz: | . . . And from week to week that Service Painting employed members of District Council 21, it deducted monies from their paychecks— |
| Mr. Garavelas: | That's correct. . . . |
| Mr. Milz: | [I]s it your understanding that Service Painting did not pay those obligations? |
| Mr. Garavelas: | Partially. . . . |
| Mr. Milz: | So it was your understanding then that you sent partial payments but did not satisfy the full amount due? |
| Mr. Garavelas: | That's correct.[21] |

Mr. Garavelas testified he prioritized the monthly installment payments to Mr. Campbell under the November 27, 2013 stock purchase agreement:

| Mr. Milz: | Okay. Are you the person who made the decision as to how much Service Painting would send that month? |
|---|---|
| Mr. Garavelas: | Yes. |
| . . . | |
| Mr. Milz: | Okay. Could you then have decided to pay District Council 21 the money that had been deducted from the paychecks of your employees instead of paying Mr. Campbell? |
| Mr. Garavelas: | Yes. The reason is I have a lot of problems with Mr. Campbell and I don't want him to get back to the company.[22] |

## *The Funds sue and Service Painting files bankruptcy*

The Funds sued Service Painting and Mr. Garavelas on August 16, 2018 for unremitted employee contributions from January 2018 to July 2018.[23] They alleged three separate claims: (1) Service Painting violated Sections 502 and 515 of ERISA by failing to remit employee contributions under the collective bargaining agreement; (2) Mr. Garavelas in his individual capacity breached his fiduciary duties under ERISA by failing to remit payments due under the collective bargaining agreement; (3) Mr. Garavelas in his individual and corporate capacity violated Pennsylvania law by converting money owed to the Funds for another use.[24]

Service Painting and Mr. Garavelas failed to respond to the Funds' complaint and the Funds moved for default judgment on September 25, 2018.[25] We set a damages hearing for October 24, 2018.[26] On October 15, 2018, Service Painting informed us it filed Chapter 11 Bankruptcy on October 13, 2018 in the United States Bankruptcy Court for the Eastern District of Pennsylvania.[27] On October 16, 2018, we placed the case in suspense.[28]

4

On October 26, 2018, the Funds moved to re-open the case as to Mr. Garavelas who did not file bankruptcy.[29] The Funds argued absent certain "unusual circumstances," which did not exist here, an automatic stay pending one defendant's bankruptcy proceeding does not stay the action against a non-debtor co-defendant like Mr. Garavelas.[30] Mr. Garavelas did not respond to the motion. On November 13, 2018, we granted the motion and lifted the stay as to Mr. Garavelas only.[31] We set a damages hearing on December 14, 2018 to determine damages against Mr. Garavelas.[32] On November 16, 2018, Mr. Garavelas's counsel entered an appearance.[33] Following the December 14, 2018 hearing, the Funds withdrew their motion, we granted expedited discovery, and we reset the hearing for March 7, 2019.[34] The parties elicited testimony at the March 7, 2019 hearing from Brian Smith, District Council 21's delinquency controller, and Mr. Garavelas. Following the hearing, we ordered the Funds show cause why we could proceed against Mr. Garavelas individually and the Funds responded on March 20, 2019.[35] The parties agreed they did not need a further hearing to present evidence as to the Funds' motion for default judgment against Mr. Garavelas.

## II.    Analysis.

The Funds move for a specific damage judgment against Mr. Garavelas after he failed to respond to the complaint. Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."[36] We may hold a hearing before entering default judgment to "determine the amount of damages."[37]

## A. The Funds establish Mr. Garavelas's individual liability for (1) breach of fiduciary duty under ERISA and (2) conversion under Pennsylvania law.

### 1. The Funds establish Mr. Garavelas's individual liability under ERISA.

The Funds argues Mr. Garavelas is personally liable for breaching his fiduciary duty under ERISA by failing to remit employee contributions to the Funds. Mr. Garavelas does not contest his liability under ERISA.

Congress imposes duties on a fiduciary for an ERISA plan. Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[.]"[38] A fiduciary who breaches these duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]"[39] Congress defined "fiduciary" under ERISA as one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]"[40]

In *Molinaro*, a union pension fund sued the defendant corporation and its sole shareholder under ERISA alleging the defendants failed to remit employee contribution payments under a collective bargaining agreement.[41] The fund alleged the shareholder breached his fiduciary duty under ERISA. The court explained under ERISA, a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."[42] The shareholder testified he had exclusive authority to make the corporation's payments, including payments to the funds, and he failed to make the payments.[43] The court held the shareholder assumed a fiduciary duty under ERISA and breached the duty by failing to make the employee contribution payments to the funds. The court further held because ERISA imposes personal liability for breach of

6

fiduciary duty under the statute, the plaintiff need not pierce the corporate veil to establish the shareholder's liability.[44]

Mr. Garavelas testified he alone has authority to direct payments on behalf of Service Painting.[45] He testified he failed to remit the employee contributions to the Funds and instead used the money to make monthly installment payments to Mr. Campbell under the November 27, 2013 stock purchase agreement. The Funds sufficiently show Mr. Garavelas exercises authority and control respecting disposition of assets. The Funds further show Mr. Garavelas failed to remit contributions to the Funds. Mr. Garavelas does not dispute his liability for breach of fiduciary duty under ERISA. The Funds establish Mr. Garavelas' liability for breach of fiduciary duty under ERISA.

## 2. The Funds establish Mr. Garavelas's personal liability for conversion under Pennsylvania law.

The Funds move for default judgment against Mr. Garavelas on their conversion claim under Pennsylvania law arguing Mr. Garavelas used non-ERISA employee contributions to make monthly installment payments to Mr. Campbell under the November 27, 2013 stock purchase agreement. Mr. Garavelas argues the Funds fail to establish a conversion claim against him because he only made small rent payments with the employee contribution money.

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification."[46] We may hold an individual agent or corporate officer liable for conversion under the "participation theory" for the officer's personal participation in tortious acts by a corporation.[47]

The court in *Molinaro* held the shareholder personally liable for conversion under the "participation theory" for depriving the pension fund of the employee contributions.[48] The court explained under Pennsylvania law, "a corporate officer who takes part in the commission of a tort

7

by the corporation is personally liable for that tort."[49] The court cited other cases in Pennsylvania where courts found a corporate officer or owner personally liable for withholding employee contribution payments to pay corporate liabilities rather than submitting the wages to the employee funds.[50] The court found the shareholder (1) held sole responsibility for paying the corporation's expenses and (2) failed to submit employee contributions to the funds.[51] The court found the shareholder liable for conversion since the failure to submit wages to the funds "clearly deprived the Funds of their right of property."[52] The court entered judgment against the shareholder personally on the ERISA breach of fiduciary duty and conversion claims.[53]

Mr. Garavelas testified, as president of Service Painting, he alone determined the amount Service Painting paid to the Funds and held responsibility for directing the payments.[54] Mr. Garavelas testified he had sole authority to make payments on behalf of Service Painting.[55] Mr. Garavelas testified he withheld payments owed to the Funds and used them for other purposes, including to buy back Mr. Campbell's share of Service Painting:

| | |
|---|---|
| Mr. Milz: | So was it your understanding then that you sent partial payments but did not satisfy the full amount due? |
| Mr. Garavelas: | That's correct. |
| Mr. Milz: | Okay. Are you the person who made the decision as to how much Service Painting would send that month? |
| Mr. Garavelas: | Yes. |
| . . . | |
| Mr. Milz: | Okay. Could you then have decided to pay District Council 21 the money that had been deducted from the paychecks of your employees instead of paying Mr. Campbell? |
| Mr. Garavelas: | Yes. The reason is I have a lot of problems with Mr. Campbell and I don't want him to get back to the company.[56] |

8

The Funds establish Mr. Garavelas withheld employee contribution payments and directed these payments for other use, including to buy back Mr. Campbell's share of Service Painting.

Mr. Garavelas argues he is not liable for conversion since he used the money to make small rent payments. But his admissions show otherwise. Even assuming he used the employee contributions only to make rent payments, the court in *Molinaro* explained an officer may be liable for conversion under the "participation theory" for using employee contributions to pay other corporate liabilities.[57] The crucial question is whether Mr. Garavelas "deprived others of their right of property."[58] Regardless of how he used the employee contributions, Mr. Garavelas failed to remit the contributions to the Funds and thus deprived them of their property.[59] The Funds sufficiently show Mr. Garavelas is liable to the Funds for conversion under the "participation theory."[60]

### 3. We reject Mr. Garavelas's argument the collective bargaining agreement does not bind Service Painting.

Mr. Garavelas challenges the Funds' claims against him arguing the Funds fail to establish the collective bargaining agreement binds Service Painting. He argues the Delaware Valley Industrial Painters Alliance, not Service Painting, signed the agreement. Mr. Garavelas's argument fails.

In response to the Funds' requests for admission, Mr. Garavelas admitted Service Painting "is a signatory employer to the [International Union of Painters and Allied Trades District Council 21] Collection Bargaining Agreement."[61] He also admitted he "signed the [International Union of Painters and Allied Trades District Council 21] Collective Bargaining Agreement on Behalf of Defendant Service [Painting]."[62] He testified "since 1993 Service Painting has been party to successive collective bargaining agreements with the union."[63] Mr. Garavelas's admissions show

9

District Council 21's collective bargaining agreement binds Service Painting. Mr. Garavelas's argument fails.

The Funds establish Mr. Garavelas's liability for breach of fiduciary duty under ERISA and for conversion under Pennsylvania law.

**B.    We do not extend the automatic bankruptcy stay to protect Mr. Garavelas.**

Mr. Garavelas argues we should extend the automatic stay to him even though he is not a debtor in Service Painting's bankruptcy proceedings. Mr. Garavelas argues a finding in our case could affect Service Painting's bankruptcy proceedings. He argues if we rule in this case, our ruling could preclude the bankruptcy estate from challenging our findings.[64]

Since it filed bankruptcy and notified us on October 15, 2018, we stayed the Funds' claims against Service Painting under 11 U.S.C. § 362. Under Section 362, the filing of a bankruptcy operates as a stay for "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor[.]"[65] But the stay extends only to the debtor.[66] It does not apply to "sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor."[67] Thus, we lifted the stay as to Mr. Garavelas on November 13, 2018 since he did not file bankruptcy.[68]

We may extend the automatic stay to a non-debtor co-defendant in two situations: (1) where "stay protection is essential to the debtor's efforts of reorganization"; and, (2) where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."[69] The second exception applies when the debtor "would be forced to indemnify its co-defendants in the event of an adverse verdict."[70] We address each exception.

10

### 1. Mr. Garavelas fails to show stay protection for him is essential to Service Painting's reorganization efforts.

Mr. Garavelas has not shown stay protection for him is essential to Service Painting's reorganization efforts. Courts generally find "unusual circumstances" under this exception when the non-debtor must divert "critical management resources from the reorganization effort to litigation."[71] Mr. Garavelas fails to argue or offer evidence stay protection is essential to Service Painting's reorganization efforts. Considering the late stage of litigation in this case, Mr. Garavelas cannot credibly argue our case would divert critical management resources from Service Painting's reorganization efforts.

### 2. Mr. Garavelas fails to show a judgment against him will effectively be a judgment against Service Painting.

The Funds argue we should not extend the automatic stay to Mr. Garavelas because he fails to show Service Painting owes him an indemnification obligation.

Courts in our circuit allow extension of a stay to a non-debtor when "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."[72] Courts extend the stay to a non-debtor defendant under this exception when the non-debtor shows the debtor must indemnify the non-debtor.[73] In *Forcine Concrete*, the plaintiff construction company sued a distributor and its president and two employees for fraud, civil conspiracy, and consumer protection violations under Pennsylvania law.[74] Although the distributor filed bankruptcy, the court refused to extend the automatic stay to the non-debtor individual co-defendants when they failed to show the distributor owed them indemnification obligations.[75] Although the non-debtor defendants argued they took action in their capacities as employees, the court found they failed to offer (1) a binding agreement showing the distributor must indemnify them or (2) statutory or common law authority forcing the distributor to indemnify them.[76] Because the non-debtor

defendants failed to show their entitlement to indemnification from the debtor, the court refused to extend the automatic stay.[77]

In a similar case, Judge Yohn refused to extend an automatic stay to individual fiduciary defendants in an ERISA case after the organization defendant filed bankruptcy.[78] After explaining courts extend an automatic stay to non-debtors when the debtor owes an indemnification obligation, he found courts do so "in cases where the non-debtors' liability is derivative to their status within the debtor-corporation."[79] Judge Yohn found the indemnification scenario inapplicable since the plaintiff alleged the individual non-debtor defendants personally breached their fiduciary duties under ERISA. Judge Yohn held the "unusual circumstances" did not exist to extend the automatic stay. He explained since the plaintiff alleged fiduciary breach claims "that are not merely derivative of the defendant's job with the debtor, the defendant who owes to the plaintiff the relevant fiduciary duties, not the debtor, is the real party in interest."[80] Judge Yohn further explained even if distributor was the real party in interest, the non-debtor defendants failed to show the distributor owed them an indemnification obligation necessary to show a judgment against the non-debtor was "in effect" a judgment against the debtor.[81]

Mr. Garavelas similarly fails to show Service Painting owes him an indemnification obligation sufficient to find a judgment against Mr. Garavelas is in effect a judgment against Service Painting. Like *Stanford*, the Funds sue Mr. Garavelas for breach of fiduciary duty under ERISA. Section 1109 provides a fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]"[82] Because Mr. Garavelas individually owes the Funds a fiduciary duty, he is the real party in interest, not Service Painting.

12

### 3. We reject Mr. Garavelas's collateral estoppel argument.

Mr. Garavelas argues we should extend the automatic stay since a judgment against him could have preclusive effect in Service Painting's bankruptcy proceedings. Mr. Garavelas argues if we allow the Funds to proceed against him, a judgment for the Funds "may very well preclude the [Service Painting] bankruptcy estate from later challenging those findings."[83]

In *Forcine Concrete*, the individual non-debtor defendants argued the court should extend the automatic stay arguing a judgment against the individuals would preclude the debtor company from relitigating issues decided against the non-debtors.[84] The court rejected the non-debtor defendants' argument. It cited the court of appeals' decision in *Queenie, Ltd. v. Nygard International*.[85] In *Queenie*, the court of appeals explained if potential preclusive effect could support extension of an automatic stay, there would be "vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants."[86] The court also explained it found no authority supporting extension of an automatic stay to non-debtors due to collateral estoppel concerns.[87]

In *Stanford*, Judge Yohn addressed the non-debtors' argument for extension of the automatic stay due to collateral estoppel concerns. Also citing *Queenie*, Judge Yohn explained collateral estoppel concerns arise in cases where the debtor owes an indemnification obligation to the non-debtor.[88] Because he found the debtor did not owe the non-debtors an indemnification obligation, Judge Yohn rejected the non-debtor defendants' collateral estoppel argument.

Mr. Garavelas cites *In re Irwin*, but the case undermines his argument. In *Irwin*, a receiver sued a bankruptcy debtor and his wife and daughters seeking to recover funds the debtor acquired in a Ponzi scheme and then transferred to his wife and daughters.[89] While the court entered an automatic stay for claims against the debtor, the receiver argued the automatic stay did not extend

13

to the debtor's wife and daughters who had not filed bankruptcy. The non-debtor family members argued a judgment against them would "in effect be a judgment or finding against the debtor."[90] They argued a judgment against them in favor of the receiver would preclude the debtor's bankruptcy estate from attempting to recover from the non-debtors.

The court explained the doctrine of collateral estoppel contains four elements:

(1) [T]he identical issue was decided in a prior adjudication;
(2) there was a final judgment on the merits;
(3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and
(4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.[91]

The court explained a later action involving the debtor would lack the third element: "the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication[.]"[92] But the court also explained a prior decision could preclude a non-party's argument in later litigation under certain circumstances including, as Mr. Garavelas argues here, when "the nonparty was adequately represented in the prior litigation by someone with the same interests who was a party[.]"[93] The court found a "vigorous defense" by the non-debtor family members would provide some support for the collateral estoppel argument. But the court explained alignment of interests alone does not warrant application of collateral estoppel to a non-party. The party seeking application of collateral estoppel must show the party in the earlier proceeding must understand he is "acting in a representative capacity" for the non-party.[94] The court ultimately declined to extend the automatic stay to the non-debtors since it could only speculate whether collateral estoppel would apply in a subsequent action.[95]

Here, a court would likely not find Mr. Garavelas "adequately represented" Service Painting to preclude Service Painting's arguments in subsequent litigation. Mr. Garavelas failed to respond to the Funds' complaint and the Funds obtained a default on liability. We could not say

14

Mr. Garavelas offered a "vigorous defense" to support a collateral estoppel argument in a subsequent case. But more importantly, we can only speculate as whether a judgment against Mr. Garavelas would preclude Service Painting in future litigation. Such speculation is not enough to justify extending the stay.

We agree with Judge Yohn and the court of appeals extending an automatic stay because speculative collateral estoppel concerns would interfere with creditors' enforcement of their rights against non-debtor co-defendants. As Judge Yohn explained, collateral estoppel concerns arise when the debtor owes an indemnification obligation to the non-debtor. Mr. Garavelas does not argue or offer evidence Service Painting owes him an indemnification obligation. Mr. Garavelas's collateral estoppel argument fails.

### 4. We reject Mr. Garavelas's argument judicial economy warrants we extend the stay.

Mr. Garavelas argues we should extend the automatic stay to preserve judicial resources. But courts in our circuit do not recognize judicial economy as an "unusual circumstance" warranting extension of an automatic stay to non-debtors. Magistrate Judge Schneider in the District of New Jersey quoted the court of appeals for the Sixth Circuit explaining "duplicative or multiple litigation which may occur is a direct by-product of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned."[96] Judge Schneider explained if a court extended an automatic stay to conserve judicial resources, extensions would become routine, rather than applicable only in "unusual circumstances."[97] We agree Judicial economy does not warrant extension of the automatic stay to Mr. Garavelas.

15

## C. We award the Funds damages of $472,093.96 against Mr. Garavelas individually.

The Funds seek damages from Mr. Garavelas individually totaling $592,129.63 for: (1) $500,837.11 for breach of fiduciary duty by failing to make employee contributions to ERISA funds; and, (2) $91,292.52 for conversion under Pennsylvania law by failing to make employee contributions to non-ERISA funds.[98] The Funds have not shown a basis for the entirety of this damages calculation.

Mr. Smith, the delinquency controller for District Council 21, swore to the Funds' damages. He testified Service Painting owes contributions to five District Council 21 ERISA funds: Welfare, Annuity, Vacation, Pinpointing, and Apprentice.[99] Mr. Smith testified the principal amounts due for the five ERISA funds total $356,314.13.[100] He testified Service Painting owes $20,002.40 in interest on the outstanding ERISA contributions based on the IRS prime plus one percent.[101] He testified liquidated damages total $71,262.83 based on the provision in the collective bargaining agreement allowing liquidated damages totaling twenty percent of owed ERISA contributions.[102] The Funds also seek attorneys' fees and expenses totaling $53,257.75.[103]

Service Painting owed employee contributions to ten non-ERISA funds and accounts: (1) Industry, (2) PAC, (3) Dues Wages, (4) Dues Hours, (5) the Scholarship fund, (6) NSPCA, (7) DC21LMF, (8) HRA, (9) BenV2011, and (10) DOC.[104] Mr. Smith testified the outstanding principal amounts owed to the non-ERISA funds total $86,440.04.[105] Mr. Smith testified interest on the non-ERISA funds totals $4,852.48.[106]

The unpaid principal amounts owed for the ERISA and non-ERISA funds total $442,754.17. With interest, liquidated damages, and attorneys' fees and expenses, the total sought against Mr. Garavelas is $592,129.63.[107]

16

Mr. Garavelas challenges the Funds' damages calculation. We address each of Mr. Garavelas's arguments in turn.

### 1. Mr. Garavelas shows a discrepancy in the Funds' application of a $75,000 bond.

Mr. Garavelas argues we should not grant judgment against him because of a discrepancy between the Funds' damage amounts. He argues the Funds now seek a principal sum of $442,754.17, representing the total principal amounts due for the ERISA and non-ERISA funds. He argues when the Funds moved for default judgment on September 25, 2018, they sought $490,254.67 in principal. The Funds respond they applied bond and escrow payments to the outstanding amount, which Mr. Garavelas acknowledges in his response.

Mr. Smith testified the Funds received two payments to satisfy outstanding contribution amounts: (1) a bond payment for $75,000 and (2) an escrow payment for $24,575.04.[108] The Funds received the bond payment on December 12, 2018, following the initial motion for default judgment on September 25, 2018.[109] Mr. Smith testified he applied the escrow payment to the Vacation fund and the bond payment to the remaining employee contributions.[110]

Mr. Garavelas argues the Funds fail to show how they applied the full $75,000 bond payment. Mr. Smith testified the Union applied the $75,000 bond payment to various Funds.[111] He testified Check Number 208047 in the Funds' employee contributions spreadsheet represents the $75,000 bond payment.[112] In the spreadsheets aggregating billed contribution amounts and Service Painting's remittances for the applicable period, the Funds list where they applied the $75,000 bond payment by noting Check Number 208047 next to the applicable remittances. Mr. Smith testified we can account for the entire $75,000 by using the contribution spreadsheet:

Mr. Giacometti:    I think you did say that 208047 was that 75,000-dollar bond payment. Is that correct?

17

| Mr. Smith: | I—I believe that's—that's what that check was. Yes. |
| Mr. Giacometti: | So if we went through this entire Exhibit 1 and added up all the remittances under 208047, it will total 75,000. Correct? |
| Mr. Smith: | It certainly should, yes.[113] |

After independently calculating the remittances under Check Number 208047 on the Funds' contributions spreadsheet, we arrive at $51,082.04, or $23,917.96 short of $75,000. We cannot agree with the Funds they applied the entire $75,000 bond payment to Service Painting's billed contributions. As we cannot account for difference between $51,082.04 and $75,000, we cannot award Service Painting the full damages sought. We subtract the $23,917.96 difference from the Funds' damages calculation.

## 2. We reject Mr. Garavelas's argument concerning an inconsistency in the amount due on the January 31, 2018 Judgment Note.

Mr. Garavelas argues the Funds' damage calculation is flawed because of an apparent discrepancy in Mr. Smith's testimony. He argues in an affidavit submitted in the bankruptcy proceeding, Mr. Smith swore Service Painting owed $80,000 under the January 31, 2018 Judgment Note.[114] He argues in our case, Mr. Smith testified Service Painting only owes $62,639.67 under the Judgment Note. He argues the Funds fail to explain the discrepancy. Mr. Garavelas's argument fails.

The Funds do not seek the amounts due under the January 31, 2018 Judgment Note in this lawsuit. Mr. Smith nevertheless explained the discrepancy during our March 7, 2019 hearing. Mr. Smith testified Service Painting owes $62,639.67 in principal on the Judgment Note.[115] While Mr. Garavelas argues the Funds seek $80,000 under the Judgment Note in the bankruptcy proceeding, Mr. Smith testified $62,639.67 represents the outstanding principal balance.[116] Mr. Smith testified under the Judgment Note, Service Painting originally owed $223,988.26 in principal.[117] After

18

applying Service Painting's payments under the Judgment Note, Mr. Smith testified Service Painting owed a remaining $62,639.67 in principal.[118] Mr. Smith testified any amount above $62,639.67 is outside of principal.[119]

Mr. Smith's explanation of this discrepancy is credible. Mr. Garavelas fails to offer an alternative explanation or show how the discrepancy affects the calculation for the damages at issue in this lawsuit. The Funds do not seek damages for amounts owed under the Judgment Note, nor can we assess damages for these amounts. Mr. Garavelas's argument fails.

## 3. The Funds concede they do not seek liquidated damages and interest from Mr. Garavelas.

Mr. Garavelas also argues the Funds are not entitled to liquidated damages. But under the collective bargaining agreement, the Funds have the power "to assess liquidated damages against Employers who fail to timely report their contribution obligations and/or to remit such contributions on time, which liquidated damages shall be those specified in the Collective Bargaining Agreements as well as such liquidated damages, fines, and penalties which the Trustees as permitted by law may adopt[.]"[120]

While the collective bargaining agreement entitles the Funds to liquidated damages, Mr. Smith admitted during testimony the Funds do not seek interest and liquidated damages in this lawsuit. The Funds filed a proof of claim in Service Painting's bankruptcy proceeding seeking the outstanding amounts at issue in this case.[121] Mr. Smith testified the Funds do not seek in the bankruptcy proceedings interest and liquidated damages for the unpaid contributions. Mr. Smith then responded to our question stating the Funds similarly do not seek interest and liquidated damages from Mr. Garavalas in this case:

Court:     In the bankruptcy court are you seeking principal—are you seeking interest and liquidated damages for the debt at issue here today?

19

. . .

Mr. Smith:     No. No, they're not.

Court:         So does the same reasoning apply . . . you're not seeking it for the
               note in the bankruptcy and you say I'm not seeking it anywhere?
               You just told me you're not seeking it for the—for the interest and
               liquidated damages in the bankruptcy court for this current
               obligation. You're just seeking principal. Right?

Mr. Smith:     Correct.

Court:         But you're—is the same—does the same logic apply, you're not
               seeking interest [and] liquidated damages now in this case?

Mr. Smith:     Correct.[122]

The Funds admit not seeking interest and liquidated damages. We do not include the Funds'

requested $71,262.83 in liquidated damages in the awarded damages total. We also exclude

$20,002.40 in interest on the ERISA amounts, and $4,852.48 owed on the non-ERISA amounts.

## III.    Conclusion.

In an accompanying Order, we enter judgment against Mr. Garavelas individually for

breach of fiduciary duty under ERISA and conversion under Pennsylvania law. We reject Mr.

Garavelas's argument to extend the automatic stay.

The Funds seek a total judgment of $592,129.63. The Funds do not seek liquidated

damages totaling $71,262.83, and interest totaling $20,002.40 for ERISA funds and $4,852.48 for

non-ERISA funds. We also cannot account for $23,917.96 from the $75,000 bond payment. With

these deductions, we grant the Funds judgment against Mr. Garavelas of $472,093.96.

---

[1] The Funds are: (1) Health and Welfare, (2) Annuity, (3) Job Recovery, (4) Industry Advancement,
(5) Vacation, (6) Scholarship, (7) Job Organization Program Trust, (8) and the Finishing Trades
Institute of the Mid-Atlantic Region.

[2] N.T. N. Garavelas, Mar. 7, 2019, at p. 151.

[3] *Id.* at p. 163-64.

[4] *Id.* at p. 160.

[5] *Id.* A separate judgment note bound Service Painting to repay amounts owed for January 2014 to October 2017. *Id.* at p. 161. Those defaulted payments are not at issue in this case.

[6] *Id.* at p. 164.

[7] *Id.* at p. 151.

[8] *Id.* at p. 152.

[9] *Id.*

[10] *Id.*

[11] *Id.* at p. 153; ECF Doc. No. 30-9 (Stock Purchase Agreement).

[12] N.T. N. Garavelas, Mar. 7, 2019, pp. 153-54; ECF Doc. No. 30-9, at p. 4.

[13] N.T. N. Garavelas, Mar. 7, 2019, p. 154.

[14] *Id.* at p. 166.

[15] *Id.* at p. 155.

[16] ECF Doc. No. 30-4.

[17] N.T. B. Smith, Mar. 7, 2019, at p. 29.

[18] *Id.* at p. 140.

[19] *Id.* at p. 11.

[20] *Id.* at p. 169.

[21] *Id.* at p. 164-65.

[22] *Id.* at p. 165.

[23] ECF Doc. No. 1.

[24] *Id.*

[25] ECF Doc. No. 6.

[26] ECF Doc. No. 7.

[27] ECF Doc. No. 12.

[28] ECF Doc. No. 13.

[29] ECF Doc. No. 14.

[30] ECF Doc. No. 14-1, at p. 4.

[31] ECF Doc. No. 18.

[32] *Id.*

[33] ECF Doc. No. 20.

[34] ECF Doc. No. 35.

[35] ECF Doc. No. 43.

[36] Fed. R. Civ. P. 55(a).

[37] Fed. R. Civ. P. 55(b)(2)(B).

[38] 29 U.S.C. § 1104(a)(1)(A)(i).

[39] *Id.* § 1109(a).

[40] *Id.* § 1002(21)(A).

[41] *Laborers' Combined Funds of W. Pennsylvania v. Molinaro Corp.*, 234 F. Supp. 3d 660, 664 (W.D. Pa. 2017).

[42] 29 U.S.C. § 1104(a)(1)(A)(i).

[43] *Molinaro Corp.*, 234 F. Supp. 3d at 666.

[44] *Id.* at 668 (citing 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]")).

[45] N.T. N. Garavelas, Mar. 7, 2019, at p. 163-64.

[46] *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)).

[47] *Id.* (citing *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983)).

[48] *Molinaro Corp.*, 234 F. Supp. 3d at 668.

[49] *Id.* (quoting *Laborers Combined Funds of W. Pennsylvania v. Cioppa*, 346 F. Supp. 2d 765, 773 (W.D. Pa. 2004)).

[50] *Id.* (citing *Cioppa*, 346 F. Supp. 2d at 774; *Laborers' Combined Funds of W. Pennsylvania v. Parkins*, No. 01-79, 2002 WL 31435287, at *5 (W.D. Pa. June 5, 2002)).

[51] *Molinaro Corp.*, 234 F. Supp. 3d at 668.

[52] *Id.*

[53] *Id.* at 669.

[54] N.T. N. Garavelas, Mar. 7, 2019, at p. 163-64.

[55] *Id.* at p. 154.

[56] *Id.* at p. 165.

[57] *Molinaro Corp.*, 234 F. Supp. 3d at 668; *see also Markert v. Becker Tech. Staffing, Inc.*, No. 09-5774, 2010 WL 1856057, at *8 (E.D. Pa. May 7, 2010) ("…under the 'participation theory,' an agent or officer of a corporation can be held personally liable for conversion even if he or she only acted on behalf of the corporation and got no personal benefit.").

[58] *Molinaro Corp.*, 234 F. Supp. 3d at 668.

[59] *See Parkins*, 2002 WL 31435287, at *5 ("Whatever [the president of the company] actually did with those withholdings, his failure to transfer them to the Funds was a 'deprivation of another's right of property.'").

[60] ECF Doc. No. 1 ¶ 33.

[61] ECF Doc. No. 30-6, at p. 4.

[62] *Id.* at p. 4.

[63] ECF Doc. No. 30-12, at p. 22.

[64] ECF Doc. No. 44, at p. 4.

65 11 U.S.C. § 362(a).

66 *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997).

67 *Id.* at 509-10 (quoting *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991)).

68 ECF Doc. No. 18.

69 *Forcine Concrete & Const. Co. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 523 (E.D. Pa. 2010) (quoting *McCartney*, 106 F.3d at 510).

70 *Id.* (citing *McCartney*, 106 F.3d at 510).

71 *See In re Uni-Marts, LLC*, 404 B.R. 767, 782 (Bankr. D. Del. 2009) (finding stay protection not essential to reorganization efforts when bankruptcy case relatively small and straightforward).

72 *Forcine Concrete*, 426 B.R. at 523 (quoting *McCartney*, 106 F.3d at 510).

73 *Id.* at 525.

74 *Id.* at 523.

75 *Id.* at 525.

76 *Id.*

77 *Id.*

78 *Stanford v. Foamex L.P.*, No. 07-4225, 2009 WL 1033607 (E.D. Pa. Apr. 15, 2009).

79 *Id.* at *2.

80 *Id.*

81 *Id.* at *2 n.9.

82 29 U.S.C. § 1109(a).

83 ECF Doc. No. 44, at p. 4.

84 *Forcine Concrete*, 426 B.R. at 526.

85 *Id.* at 525 (citing *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003)).

86 *Id.* (quoting *Queenie*, 321 F.3d at 288).

[87] *Id.* at 526 ("[T]he *Queenie* court 'located [no] decision[s] applying the stay to a non-debtor' solely on collateral estoppel grounds, and this court has discovered no post-*Queenie* cases in this district extending a stay on such grounds.").

[88] *Stanford*, 2009 WL 1033607, at \*3 n.3.

[89] *In re Irwin*, 457 B.R. 413, 421 (Bankr. E.D. Pa. 2011).

[90] *Id.*

[91] *Id.* (quoting *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992)).

[92] *Id.* at 422 (quoting *Centra*, 983 F.2d at 505).

[93] *Id.*

[94] *Id.* (quoting *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008)).

[95] *Id.* at 423 ("[W]hen a court is asked to evaluate the applicability of preclusion principles, the prior proceeding is a thing of the past and the court in the subsequent action determines the preclusive effect, if any, of the issues previously decided.").

[96] *Jackson v. Trump Entm't Resorts, Inc.*, No. 13-1605, 2015 WL 13637411, at \*4 (D.N.J. Feb. 11, 2015) (quoting *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1199 (6th Cir. 1983)).

[97] *Id.*

[98] ECF Doc. No. 32, at pp. 2-3.

[99] N.T. B. Smith, Mar. 7, 2019, at p. 12.

[100] *Id.* at p. 10.

[101] *Id.*

[102] *Id.*

[103] ECF Doc. No. 32, at p. 2.

[104] ECF Doc. No. 30-5.

[105] N.T. B. Smith, Mar. 7, 2019, at p. 12.

[106] *Id.* at pp. 17-18.

[107] ECF Doc. No. 30-5, at p. 125.

[108] N.T. B. Smith, Mar. 7, 2019, at p. 44.

[109] ECF Doc. No. 30-5, at p. 130 (showing bond payment receipt date of December 12, 2018).

[110] N.T. B. Smith, Mar. 7, 2019, at p. 95.

[111] *Id.* at p. 101.

[112] *Id.*; ECF Doc. No. 30-5 (the Funds' employee contributions billing and remittance spreadsheet for Service Painting).

[113] N.T. B. Smith, Mar. 7, 2019, at p. 101.

[114] ECF Doc. No. 36-2, at p. 5.

[115] N.T. B. Smith, Mar. 7, 2019, at p. 140.

[116] *Id.*

[117] *Id.* at pp. 138-39.

[118] *Id.* at p. 140.

[119] *Id.* at pp. 140-41.

[120] ECF Doc. No. 30-15, at pp. 11-12.

[121] N.T. B. Smith, Mar. 7, 2019, at 137.

[122] *Id.* at pp. 147-48.